People v Cooperman (2024 NY Slip Op 01454)

People v Cooperman

2024 NY Slip Op 01454

Decided on March 15, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 15, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CURRAN, OGDEN, GREENWOOD, AND NOWAK, JJ.

907 KA 23-00985

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SAMUEL COOPERMAN, DEFENDANT-APPELLANT. 

EASTON THOMPSON KASPEREK SHIFFRIN LLP, ROCHESTER (BRIAN SHIFFRIN OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MARTIN P. MCCARTHY, II, OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Stephen T. Miller, A.J.), rendered January 19, 2023. The judgment convicted defendant upon a jury verdict of sexual abuse in the first degree and rape in the third degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of sexual abuse in the first degree (Penal Law § 130.65 [2]) and rape in the third degree (§ 130.25 [3]). We affirm.
Defendant contends that Supreme Court erred in denying his motion to dismiss the indictment on statutory speedy trial grounds (see CPL 30.30). Where, as here, a defendant is charged with a felony, the People must announce readiness for trial within six months of the commencement of the action (see CPL 30.30 [1] [a]; People v England, 84 NY2d 1, 4 [1994], rearg denied 84 NY2d 846 [1994]). There are two elements to the People's readiness for trial: (1) " 'a statement of readiness by the prosecutor in open court . . . or a written notice of readiness' " and (2) "the People must in fact be ready to proceed at the time they declare readiness" (People v Chavis, 91 NY2d 500, 505 [1998]; see People v Hill, 209 AD3d 1262, 1264 [4th Dept 2022], lv denied 39 NY3d 986 [2022]). "A statement of readiness [made] at a time when the People are not actually ready is illusory and insufficient to stop the running of the speedy trial clock" (England, 84 NY2d at 4) and will be deemed invalid (see CPL 30.30 [5]).
As relevant here, "[a]ny statement of trial readiness must be accompanied or preceded by a certificate of good faith compliance with the disclosure requirements of [CPL] 245.20" (CPL 30.30 [5]; see 245.50 [1]; People v Gaskin, 214 AD3d 1353, 1354 [4th Dept 2023]). A certificate of compliance (COC) must state that, "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" and must also "identify the items provided" (CPL 245.50 [1]; see Gaskin, 214 AD3d at 1354). Notwithstanding the provisions of any other law, and absent an individualized finding of special circumstances by the court before which the charge is pending, the prosecution will not be deemed ready for trial for purposes of CPL 30.30 until it has filed a "proper" COC pursuant to CPL 245.50 (1) (CPL 245.50 [3]).
Here, the criminal action against defendant was commenced on August 4, 2021 (see CPL 1.20 [17]). The People filed their COC and statement of readiness on September 28, 2021. On November 14, 2022, defendant moved to dismiss the indictment on speedy trial grounds, arguing that the People's failure to provide all discovery required by CPL 245.20 rendered the COC improper and the statement of readiness illusory. Thus, he argued that the People should be charged with the entirety of that approximately 14-month period, requiring dismissal of the [*2]indictment (see CPL 30.30 [1]). The court denied the motion, concluding that the COC was proper and that the statement of readiness therefore was not illusory.
We conclude that the court did not err in denying defendant's motion. CPL 245.20 (1) requires the prosecution to disclose "all items and information that relate to the subject matter of the case," which includes, as relevant on this appeal, "[a]ll evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to . . . impeach the credibility of a testifying prosecution witness" (245.20 [1] [k] [iv]) (impeachment materials), as well as "[a]ll tapes or other electronic recordings, including all electronic recordings of 911 telephone calls made or received in connection with the alleged criminal incident" (245.20 [1] [g]) (electronic material).
The Court of Appeals recently stated in People v Bay that, in evaluating the propriety of a COC—i.e., whether the People have complied with their disclosure obligations under CPL 245.20—"the key question . . . is whether the prosecution has 'exercis[ed] due diligence and ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery' " (— NY3d &mdash, &mdash, 2023 NY Slip Op 06407 at *2 [2023]; see CPL 245.50 [1]). Due diligence "is a familiar and flexible standard that requires the People to make reasonable efforts to comply with statutory directives" (Bay, — NY3d at &mdash, 2023 NY Slip Op 06407 at *2 [internal quotation marks omitted]). That analysis "is fundamentally case-specific . . . and will turn on the circumstances presented" (id.). Although the statute does not require a "perfect prosecutor," the Court emphasized that the prosecutor's good faith, while required, "is not sufficient standing alone and cannot cure a lack of diligence" (id.).
On a CPL 30.30 motion to dismiss on the ground that the People failed to exercise due diligence and therefore improperly filed a COC, "the People bear the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" (id.). Where the People fail to meet their burden, the COC "should be deemed improper, the readiness statement stricken as illusory, and—so long as the time chargeable to the People exceeds the applicable CPL 30.30 period—the case dismissed" (id.). In determining whether the People exercised due diligence, the Court in Bay identified the following non-exhaustive list of factors for courts to consider: "the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (id.).
Here, defendant contends that the COC was invalid because the People did not disclose to him certain law enforcement disciplinary records (see Public Officers Law § 86 [6]) for use as impeachment materials (see CPL 245.20 [1] [k] [iv]). The law enforcement disciplinary records at issue pertained to individuals who the People indicated would not be testifying at trial. Thus, those records were not subject to automatic discovery inasmuch as CPL 245.20 (1) (k) (iv) requires disclosure only of materials that tend to "impeach the credibility of a testifying prosecution witness" (emphasis added). Because the People were not required to disclose the impeachment materials, we have no occasion to apply the Bay due diligence standard with respect to that allegedly missing category of discovery. To the extent that defendant contends that other portions of CPL 245.20 (1) (k) applied to the personnel files at issue here, we conclude that he did not preserve that contention for our review (see CPL 470.05 [2]), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Defendant also contends that the COC was improper because the People failed to disclose certain records from the Monroe County Office of Emergency Communication (OEC)—i.e., the electronic material (see CPL 245.20 [1] [g]). Even assuming, arguendo, that the requested OEC records constituted material subject to automatic discovery under CPL 245.20 (1) (g), we conclude, under the circumstances of this case and upon considering the relevant factors, that the court did not err in denying defendant's motion inasmuch as the People exercised due diligence and "made reasonable efforts sufficient to satisfy CPL article 245" (Bay, — NY3d at &mdash, 2023 NY Slip Op 06407 at *2; see CPL 245.50 [1]). In particular, we note that it would not have been obvious to the People that the OEC records in question were missing because the People knew that there had been no 911 calls inasmuch as the victim reported the crime by going to the police [*3]station in person. Defendant does not contend that the missing electronic material contained any substantive information about the case and, as the People point out, those materials were not used by either side at trial. In contrast, the missing discovery in Bay included an arrest report, a 911 call and the associated call detail report, and a domestic incident report, and the Court of Appeals held that the People's COC was improper based on their failure to establish that they exercised due diligence to identify such routinely produced disclosure material prior to filing the COC (see Bay, — NY3d at &mdash, 2023 NY Slip Op 06407 at *3). Unlike the missing material in Bay, the electronic material at issue here was not discovery material that would have been obviously missing or critical to the underlying case.
We also note that the People here made substantial efforts to comply with their discovery obligations under CPL article 245, which pertinently included the disclosure of recordings of a controlled call between defendant and the victim and defendant's interview with the police, as well as material relevant to the search warrant executed at defendant's residence. Having automatically disclosed the aforementioned evidence, which was critical to the case against defendant, it is all the more apparent that the absence of the OEC material, which was not critical, would not have been obvious to the People even in the exercise of due diligence.
In Bay, the Court of Appeals made clear that whether the People exercised due diligence is not to be examined in a vacuum. To that end, the non-exclusive list of factors articulated by the Court in that case calls for a holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test that would require us to conclude that a COC is improper if the People miss even one item of discovery (see Bay, — NY3d at &mdash, 2023 NY Slip Op 06407, *2). Applying that assessment, we conclude that the People exercised due diligence to obtain and furnish to defendant materials that were subject to automatic discovery under CPL article 245 (see generally id.).
In light of our conclusion that the People's COC was proper and that their statement of readiness therefore was not illusory, the People could be charged with only the approximately 55-day period between the commencement of the criminal action and the filing of their statement of readiness, and the court thus did not err in denying defendant's speedy trial motion (see CPL 30.30 [1] [a]; England, 84 NY2d at 4).
Viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's contention that the verdict is against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Although a different verdict would not have been unreasonable "inasmuch as this case rests largely on the jury's credibility findings with respect to the testimony of the victim" (People v Watts, 218 AD3d 1171, 1173 [4th Dept 2023], lv denied 40 NY3d 1013 [2023] [internal quotation marks omitted]), we cannot conclude that the jury "failed to give the evidence the weight it should be accorded" (Bleakley, 69 NY2d at 495). Where, as here, "witness credibility is of paramount importance to the determination of guilt or innocence, we must give great deference to the jury, given its opportunity to view the witnesses and observe their demeanor" (People v Streeter, 118 AD3d 1287, 1288 [4th Dept 2014], lv denied 23 NY3d 1068 [2014], reconsideration denied 24 NY3d 1047 [2014] [internal quotation marks omitted]; see People v McKay, 197 AD3d 992, 993 [4th Dept 2021], lv denied 37 NY3d 1060 [2021]). The jury here was "entitled to credit the testimony of the People's witnesses, including that of the victim, over the testimony of defendant's witnesses," as well as over defendant's conflicting accounts of the incident, which consisted of statements he provided during a controlled call with the victim and during an interview with the police, and we perceive no reason to disturb the jury's credibility determinations in that regard (People v Tetro, 175 AD3d 1784, 1788 [4th Dept 2019]; see Watts, 218 AD3d at 1173; People v Mercado-Gomez, 206 AD3d 1643, 1644 [4th Dept 2022]). To the extent that there were any inconsistencies in the victim's testimony, we conclude that her testimony "was not 'so inconsistent or unbelievable as to render it incredible as a matter of law' " (People v Lewis, 129 AD3d 1546, 1548 [4th Dept 2015], lv denied 26 NY3d 969 [2015]; see People v O'Neill, 169 AD3d 1515, 1515-1516 [4th Dept 2019]; see also People v Mack, 217 AD3d 1518, 1518-1519 [4th Dept 2023], lv denied 40 NY3d 951 [2023]), and "any such inconsistencies merely presented issues of credibility for the jury to resolve" (Mercado-Gomez, 206 AD3d at 1644; see People v Anderson, 220 AD3d 1223, 1224 [4th Dept 2023]).
Finally, defendant's sentence is not unduly harsh or severe.
Entered: March 15, 2024
Ann Dillon Flynn
Clerk of the Court